# Order

Michigan Supreme Court
Lansing, Michigan

October 22, 2010

139194

PEOPLE OF THE STATE OF MICHIGAN,
          Plaintiff-Appellee,

v

JESSICA STARR BARKLEY,
          Defendant-Appellant.

_____/

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway
Alton Thomas Davis,
Justices

SC: 139194
COA: 283458
St. Clair CC: 07-000496-FH

By order of November 20, 2009, the application for leave to appeal the May 12, 2009 judgment of the Court of Appeals was held in abeyance pending the decision in *People v Feezel* (Docket No. 138031). On order of the Court, the case having been decided on June 8, 2010, 486 Mich 184 (2010), the application is again considered and, pursuant to MCR 7.302(H)(1), in lieu of granting leave to appeal, we VACATE the judgment of the Court of Appeals and we REMAND this case to the Court of Appeals for reconsideration in light of *Feezel*. The remand is limited to the first issue raised by the defendant, regarding her conviction under MCL 257.625(4), (8). In all other respects, leave to appeal is DENIED, because we are not persuaded that the remaining question presented should be reviewed by this Court.

CORRIGAN, J. (*dissenting*).

I would deny defendant's application for leave to appeal or, in the alternative, grant the application in order to address the viability and applicability of this Court's decision in *People v Feezel,* 486 Mich 184 (2010).

## THIS COURT'S *FEEZEL* DECISION

The substance 11-carboxy-tetrahydrocannabinol (THC) is a metabolite of marijuana indicating recent ingestion of the drug. *Feezel,* 486 Mich at 210. In *Feezel,* this Court concluded that a defendant may not be found guilty of operating a motor vehicle and causing death with the presence of a schedule 1 controlled substance in his body, MCL 257.625(4) and (8), although tests reveal that he had 11-carboxy-THC in his

blood at the time of the fatal accident. *Id.* at 211-212. In so holding, the Court overruled in part *People v Derror,* 475 Mich 316 (2006). I joined Justice YOUNG's dissent with regard to this aspect of the *Feezel* opinion because I conclude, as did a majority of the Court in *Derror,* that 11-carboxy-THC is a schedule 1 controlled substance as defined by MCL 333.7212(1)(c) (listing marijuana as a schedule 1 controlled substance) and MCL 333.7106(3) (defining marijuana to include "every compound" and "derivative" of the plant Cannabis sativa L.).

The trouble caused by the *Feezel* decision is worthy of this Court's serious attention. Most significantly, State Police officials report that, in the wake of recent increases in accidents involving drug use, the *Feezel* opinion "leaves law enforcement officers in a legal limbo."[1] In the words of Sgt. Christopher Hawkins, legislative liaison for the State Police, as reported by the Detroit News: "We're in a frustrating situation"; "It's almost like the courts are saying that we can arrest if we find marijuana on you, but it's different if we find marijuana in you." Accordingly, I urge the Court to consider whether *Feezel* was wrongly decided and whether the clear *Derror* rule—which acknowledged that all derivatives of THC are schedule 1 substances—in fact defied practical workability, as the *Feezel* majority claimed. 486 Mich at 215. In truth, it seems that *Feezel* defies practical workability!

THE IMPACT OF *FEEZEL* HERE

This case well illustrates the potential confusion wrought by the *Feezel* decision. Defendant, who was driving with THC in her system, ran a stop sign and collided with a pick-up truck that had the right of way at the intersection. Two passengers in defendant's car—her six-year-old son and her adult friend—were killed. As a result, a jury convicted defendant of two counts of negligent homicide and one count of operating a motor vehicle and causing death while having a controlled chemical substance (marijuana) in her body, MCL 257.625(4) and (8). Under *Derror,* defendant's guilt of this last offense was clear. But *Feezel* attempts to distinguish one metabolite of marijuana, 11-carboxy-THC, and prohibit it from being dubbed a controlled substance. Accordingly, the nature of defendant's offense is now unclear. An expert testified that defendant's urine contained a sufficient amount of THC—at least 50 nanograms per milliliter—to test positive for the substance. But it is unclear from the record provided to this Court *which* metabolite or metabolites of THC were measured. All metabolites of THC indicate ingestion of marijuana, and defendant did not contest at trial which metabolite or metabolites appeared in her system.

---

[1] Tom Greenwood, "Ruling clouds pot smoking, driving law," The Detroit News, July 29, 2010, available at <http://detnews.com/article/20100729/METRO/7290387/Ruling-clouds-pot-smoking--driving-law> (accessed August 30, 2010).

Moreover, it appears that revisiting this question—which was unanticipated by the parties because it was invented by the *Feezel* Court after defendant's convictions entered—would be unlikely to have any effect on this case. Not only did defendant fail to contest which metabolite or metabolites were in her system, but her primary argument on appeal would fail regardless of which metabolites were present. She argues that the record failed to show that she *knew* THC was still in her system, apparently because the record was silent with regard to whether she knew her driving was measurably impaired by marijuana. But the prosecutor was not required to prove that she knew she was impaired by a controlled substance; mere presence of "any amount" of the substance in a person's body is necessary for conviction. *Derror,* 475 Mich at 334.[2] The person's errant *driving*, not the person's impairment due to intoxication, must have caused the death. *Id.* at 333. Defendant effectively argues that she decided to gamble by driving after an indefinite period of time had passed since she ingested the marijuana but she should not be liable because, having not tested herself for THC before getting behind the wheel, she did not know with certainty whether THC remained in her system. This argument is irrelevant under the statute even in the wake of the *Feezel* decision. Finally, I note that defendant was paroled in June 2010 after serving her 2½-year minimum sentence. She is scheduled to be discharged from parole by December 2011.

YOUNG and MARKMAN, JJ., join the statement of CORRIGAN, J.

---

[2] The Legislature could have had many plausible reasons for defining the offense this way. Perhaps most notably, the Legislature may have taken into account that blood or urine tests conducted after an accident can establish with precision neither the amount of the controlled substance that was present, nor the precise degree of the offender's impairment, at the time the offender's driving killed the victim. This may be the reason for the Legislature's decision to draw the strict evidentiary line evident in the language of MCL 257.625(8), prohibiting a person from operating a vehicle "if the person has in his or her body any amount of a controlled substance listed in schedule 1 . . . ." Although after-the-fact tests cannot always establish the level of the offender's intoxication at the time he killed someone, such tests can reliably establish that he ingested a controlled substance and, some time later, nonetheless chose to drive.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

October 22, 2010

Clerk

y1019